James **BEDREE**, Appellant–Plaintiff,

v.

Jennifer **DeGROOTE**, Appellee–Defendant.

No. 02A03–0306–CV–241.

Court of Appeals of Indiana.

Dec. 9, 2003.

James Bedree, Fort Wayne, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

James Bedree, proceeding pro se, appeals from the dismissal of his lawsuit against Jennifer DeGroote, who presided as magistrate over a lawsuit filed by Bedree in Allen Superior Court, Small Claims Division. The instant lawsuit stems indirectly from that original small claims action. Bedree presents the following issue for review: "Trial court erred dismissing

appellant's claim with prejudice and improper inequable [sic] partiality proceedings, and patent abuse of discretion."

We affirm.

The relevant facts are undisputed. Bedree filed a small claims action in Allen Superior Court. On May 20, 2002, Bedree filed what he designated as "an application for an impartial judge to preside" at that trial. *Appellant's Appendices*[1] at 8. When Bedree arrived for the trial on May 28, he discovered that DeGroote was presiding. He asked DeGroote to disqualify herself, and she denied the request. Bedree evidently did not prevail in his small claims action. On September 5, 2002, Bedree filed another small claims action in Allen Superior Court, this one against DeGroote. He alleged that DeGroote incurred civil liability because she exercised "usurped authority" and acted "wholly without jurisdiction" in presiding over his May 28 small claims case. *Id.* Also on that day, Bedree filed a request for the appointment of a special judge, i.e., someone other than an Allen County judge, to preside over the action against DeGroote. The matter was set for trial on January 14, 2003.

On January 9, 2003, Deputy Attorney General Loralei Lannan filed an appearance on DeGroote's behalf and immediately requested a continuance. Also on that day, DeGroote filed a motion to dismiss Bedree's complaint for failure to state a claim, based ultimately on grounds of judicial immunity. As of the date of the scheduled trial, a special judge had still not been appointed. Nevertheless, on January 14, Bedree traveled to the courthouse in anticipation of trial. Of course, De-

---

1. "Appendices" is, of course, the plural form of "appendix." Only one appendix need be filed, although it may be comprised of multiple volumes. In the instant case, although designated as appellant's "appendices", there is but one appendix, and it consists of only a single volume. Notwithstanding that the appellant's designation is descriptively inaccurate, we will employ the title assigned to it by Bedree.

Groote did not appear for trial. Bedree immediately filed an Affidavit for Judgment by Default. The next day, January 15, 2003, Judge Nancy Eshcoff Boyer of the Allen Superior Court denied Bedree's motion for default judgment, stating in part, "5. Plaintiff having filed his Request for Special Judge, all hearings and other matters are continued to be reset pending the ruling on Plaintiff's Motion for Special Judge. 6. As no Judge had been yet appointed, no trial could proceed. Plaintiff's request for default judgment is therefore DENIED." *Id.* at 36. On January 16, Judge William Fee of the Steuben Circuit Court was appointed as special judge in the cause, although he did not assume jurisdiction immediately.

On January 24, Bedree filed a Motion to Nullify and Void Judge Nancy Eshcoff Boyer's Order, presumably referring to the denial of Bedree's motion for default judgment. On January 30, 2003, Judge Boyer issued an order denying Bedree's motion to nullify. That order stated, in pertinent part:

1. On January 14, 2003, Plaintiff appeared and requested a default judgment.
2. No default judgment was entered.
3. Plaintiff does not have a default judgment as no default judgment was entered.
4. If the trial Judge has no jurisdiction to consider any matter involved in the case, then the trial Judge had no jurisdiction to enter a default judgment.
5. It is not the Plaintiff that enters the judgment, it is the Plaintiff that requests that a judgment be entered. It is the trial Judge who enters the default judgment.
6. As Plaintiff had no default judgment on January 14, 2003, his current pleading is moot.

*Id.* at 37. Shortly thereafter, Judge Fee assumed jurisdiction in the case. On February 5, Judge Fee denied Bedree's motion to void Judge Boyer's January 30 order. On February 14, Bedree filed what he styled as a motion to correct errors. In that pleading, Bedree renewed his request that his motion for default judgment be granted. On February 14, Judge Fee denied Bedree's motion to correct errors with the following written order:

Being duly advised, upon plaintiff's filing of a Motion to Correct Errors on or about February 12, 2003, it is now ordered that said motion is not well-taken and denied. Contrary to plaintiff's assertion, the record reflects that no default judgment has been entered in this cause. The plaintiff's Complaint is in pretrial status, and the pending issue before the Court is defendant's Motion to Dismiss filed January 9, 2003. Pursuant to the Court's Chronological Case Summary entry of January 24, 2003, the plaintiff is to file any written response no later than February 24, 2003.

*Id.* at 33. On March 18, 2003, Bedree filed a Motion to Grant Judgment. The relief sought and the basis upon which that request rested are reflected in the following paragraphs of the motion:

4. UP TO THE TIME OF TRIAL AT 10:00 A.M. PLAINTIFF DID *"NOT"* RECEIVE NOTICE OF CONTINUANCE GRANTED, NEITHER [sic] BY LAW CLERK, CHRIS MATERZIS, NOR JUDGE NANCY ESCHOFF BOYER. JANUARY 30, 2003.

5. ATTACHED COPY OF ENVELOPE BEARING POST MARK DATE, THAT CLEARLY SHOWS LANNAN'S FAILURE TO TIMELY FILE SEVEN (7) DAYS PRIOR TO TRIAL ON JANUARY 14, 2003. SMALL CLAIMS RULE 7A.

6. THEREFORE, LANNAN'S CLAIM *IS PRECLUDED*.

WHEREFORE, PLAINTIFF IS ENTITLED TO JUDGMENT ON HIS COMPLAINT OF SEPTEMBER 5, 2002, AND IS PROVIDED IN SMALLS (sic) CLAIMS RULE 7E FOR SANCTIONS FOR FAILURE TO NOTIFY, CAUSING PLAINTIFF TO APPEAR AT TRIAL, PLAINTIFF'S CLAIM OF $5494.00 AND $250.00 SANCTIONS FOR THE TOTAL OF $5744.00.

*Id.* at 41 (emphasis in original). On March 19, 2003, Judge Fee denied Bedree's motion to grant judgment. Judge Fee determined that DeGroote's refusal to grant default judgment in Bedree's favor in the original small claims action, as well as her refusal to disqualify herself from that case, were actions undertaken in her official capacity as magistrate and therefore protected by judicial immunity. In that same ruling, and for the same reason, Judge Fee granted DeGroote's motion to dismiss for failure to state a claim.

In response to the March 19 ruling, Bedree filed a Motion for Relief From Order. In it, Bedree asserted that the order contained "patent mistakes." *Id.* at 45. First, Bedree claimed that there was no request for default judgment in the small claims case involving GMAC as defendant. Rather, Bedree asserted, DeGroote awarded judgment to the defendant in that case on May 28, 2002. "MAGISTRATE DEGROOTE DID NOT 'GRANT ANY DEFAULT JUDGMENT' TO JAMES BEDREE NOR DID MAGISTRATE DEGROOTE 'DENY ANY DEFAULT JUDGMENT TO JAMES BEDREE ON MAY 28, 2002' SMALL CLAIMS CASE, AS 'DEFAULT JUDGMENT' 'WAS NOT AN ISSUE'." *Id.* at 45. Bedree went on in the motion to argue the merits of DeGroote's refusal to

disqualify herself in the original action. The court denied Bedree's motion for relief from order and this appeal ensued.

We pause before commencing our analysis to make the observation that Bedree's performance as a litigant and as an appellate advocate clearly illustrates the perils of pro se litigation. We understand, of course, that the small claims rules envision pro se litigation, at least from the time of filing the action through the conclusion of the hearing. *See* S.C.R. 8(A); *Flint v. Hopkins,* 720 N.E.2d 1230 (Ind.Ct.App. 1999). Filing pre- and post-trial motions invoking the rules of trial and appellate procedure, as well as appealing decisions made by the small claims courts, however, are beyond the ken of the average person who has no legal training, and that is true whether the litigant is in small claims court or in a regular trial court.

■ We note that DeGroote's primary argument against Bedree upon appeal is that Bedree has waived his contentions. Bedree's arguments, as presented in his appellate brief, are convoluted and confusing, and decidedly short of the standard established in the appellate rules. So much so, in fact, that our difficulty in discerning even the nature of the arguments would justify disposition by waiver. We believe that we were able to understand at least the gist of his contentions, however, and proceeding on that assumption, will address those arguments on the merits.

The original ruling that gave rise to all that followed in this lawsuit was the failure of Magistrate DeGroote to recuse from Bedree's small claims action against GMAC. Bedree does not enlighten us on the subject of why that request was made. Thus, we are unable to evaluate DeGroote's decision to deny Bedree's request that she disqualify herself. We know that Bedree filed a lawsuit against DeGroote in

early September of 2002 because she presided over his small claims trial. We are aware, of course, that Bedree's claim of error on appeal technically does not challenge the fact that DeGroote presided over his first small claims trial. Rather, Bedree challenges Judge Fee's ruling on his motion for relief from Judge Fee's prior ruling denying Bedree's motion for default judgment and granting DeGroote's motion to dismiss. More specifically, Bedree's argument focuses on his claim that he is entitled to default judgment because DeGroote did not appear at a hearing that was originally scheduled for January 14, 2003. It cannot be doubted, however, that the question of the propriety of DeGroote's participation at the original hearing permeates the entire action.

Because the nature of his contentions are not clear, we must examine the relief sought in order to make that determination. Bedree "asks this court's recommendation for an award of his judgment being sought." *Appellant's Brief* at 5. We take this to mean that he challenges the denial of his motion for default judgment. We arrive at this conclusion because there was never a trial in his action against DeGroote, and thus the only judgment to which Bedree is even arguably entitled would be via the motion for default judgment he filed forty-five minutes after the trial was originally scheduled to have commenced—and after Bedree evidently was convinced that DeGroote was not going to appear. Therefore, we will review the denial of the motion for default judgment.

■ In general, default judgments are not favored in Indiana. *Young v. Elkhart County Office of Family & Children,* 704 N.E.2d 1065 (Ind.Ct.App.1999). The grant or denial of a motion for default judgment is committed to the trial court's sound discretion. *Kelly v. Bennett,* 732 N.E.2d 859 (Ind.Ct.App.2000). We will re-

verse such a ruling on appeal only if the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

Bedree's argument in favor of default judgment does not involve the merits of his claim that DeGroote erred in presiding over his trial. Rather, he contends that her failure to attend a hearing on January 14 constituted a violation of the rules governing small claims actions and thereby handed him a victory through procedural default. Not surprisingly, Bedree's argument is fraught with misconceptions and ignorance concerning the judicial process.

■ It seems to us that the commencement of Bedree's action against DeGroote is a good starting point for our analysis. Bedree filed his small claims action against DeGroote on September 5, 2003. Soon thereafter, the action was scheduled for a trial (also called a "hearing" in a small claims proceeding, *see, e.g.,* Ind. Small Claims Rule 9(A)) on January 14, 2002. Of particular significance in this case is the fact that, on the same day he filed his complaint against DeGroote, Bedree also filed a motion requesting a special judge. Bedree did not specify in the motion itself the procedural basis for his request for change of judge. It appears, however, it was based upon Rule 76(B) of the Indiana Rules of Trial Procedure, which states, in relevant part, "In civil actions, where a change may be taken from the judge, such change shall be granted upon the filing of an unverified application or motion without specifically stating the ground therefor by a party or his attorney." When a party files a motion for change of judge under T.R. 76, the trial court is divested of jurisdiction except to grant the change of venue or act on emergency matters. *In re Marriage of Turner v. Turner,* 785 N.E.2d 259 (Ind.Ct.App.2003). Thus, upon the filing of Bedree's motion for a special judge, Judge Boyer was divested of jurisdiction

to act except in the case of "emergency matters."

 The CCS reflects that the next action in the case was the Attorney General's entry of an appearance on DeGroote's behalf and request for a continuance, both of which occurred on January 9, 2003. Bedree claims he was not notified of the request for continuance. As a result, he appeared at the courthouse on January 14 expecting to participate in a trial. Even assuming that Bedree did not have actual or constructive notice of DeGroote's request for continuance, it is undisputed that no judge had yet been appointed to preside over the case. Therefore, as of the date of the *scheduled* trial, no judge had yet acquired jurisdiction over the lawsuit for purposes of conducting a trial. Accordingly, trial on that date was not even possible. We are aware, of course, that it may assume too much to expect Bedree to have had actual knowledge that there was a jurisdictional problem that foreclosed the possibility of holding trial that day. Bedree's amateur status, however, does not provide shelter. A litigant who chooses to proceed pro se will be held to the rules of procedure the same as would trained legal counsel. *Davidson v. Perron,* 756 N.E.2d 1007 (Ind.Ct.App.2001), *trans. denied.* Therefore, Bedree was charged with the knowledge that a trial of his cause on January 14 was impossible. It follows as a simple exercise in logic that Bedree is not entitled to a judgment signifying that he prevailed—for whatever reason—at a trial that could not possibly have been held on that date in the first place.

It is settled, then, that Bedree was not entitled to default judgment with respect to the nonexistent January 14 "trial." Two questions remain: (1) what is the legal effect, if any, of Judge Boyer's January 14 denial of Bedree's motion for default judgment, and (2) did the trial court (Judge Fee presiding) err in granting De-Groote's motion to dismiss?

 As noted above, Judge Boyer had only limited jurisdiction in Bedree's case following his September 5 request for appointment of a special judge. She could, of course, grant the motion for appointment of a special judge, which she did on January 15. Judge Fee was appointed the next day. She also retained jurisdiction to issue orders concerning "emergency matters," pending the special judge's assumption of jurisdiction. We need not explore the limits of the definition of "emergency" in this context. For our purposes here, it is enough to note that the common meaning of "emergency" is an "unforeseen combination of circumstances or the resulting state that calls for immediate action." *Merriam–Webster OnLine Dictionary, available at* http://www.m-w.com.home. htm. DeGroote's motion for continuance filed five days before the scheduled hearing date, and at a time when no judge had assumed jurisdiction over the case, clearly was a circumstance that called for immediate action. Thus, Judge Boyer had jurisdiction to rule on it.

The same cannot be said, however, of Bedree's motion for default judgment. That request was not time-sensitive. As a result, Judge Boyer did not have jurisdiction to dispose of the motion. It would appear that Judge Boyer ruled on the motion, notwithstanding this lack of jurisdiction. A close examination of the language of the relevant order, however, reveals that Judge Boyer did not deny the motion with prejudice. Rather, the effect of her ruling was to neither grant nor deny the motion, as reflected in the following:

1. On September 5, 2002, Plaintiff filed a Notice of Claim against Magistrate Jennifer DeGroote.

2. On that same day, Plaintiff set a trial date of January 14, 2003 at 10:00 a.m.

3. Plaintiff filed a Request for a Special [sic] for a Special Judge.

4. Subsequent to the filing of a Request for Special Judge, the Attorney General of the State of Indiana filed a Written Appearance for Defendant herein, Motion to Dismiss and a Motion to Continue the hearing date of January 14, 2003.

5. Plaintiff having filed his Request for Special Judge, *all hearings and other matters are continued to be reset pending the ruling on the Plaintiff's Motion for Special Judge.*

6. As no Judge had been yet appointed, no trial could proceed. Plaintiff's request for default judgment is therefore DENIED.

*Appellant's Appendix* at 21 (emphasis supplied). It would perhaps have been more accurate for Judge Boyer to couch her ruling in terms of neither granting nor denying the motion, but instead holding the motion in abeyance pending the appointment of a special judge. The difference between this and what Judge Boyer actually accomplished, however, is largely one of semantics. That is, the practical effect of Judge Boyer's ruling was to hold Bedree's motion in abeyance for the special judge to rule upon. Judge Boyer's intention to do just that was reflected in her January 30 ruling clarifying that Bedree was not automatically entitled to default judgment merely on the basis of DeGroote's failure to appear in court on January 14 (viz., "[i]f the trial Judge has no jurisdiction to consider any matter involved in the case then the trial Judge had no jurisdiction to enter a default judgment"). *Appellant's Appendix* at 28.

In any event, and regardless of how one views the effects of Judge Boyer's rulings on January 15 and 30, Judge Fee set everything in order when he assumed jurisdiction of the case in early February. He immediately denied Bedree's attempt to establish that he had somehow obtained default judgment by virtue of DeGroote's failure to appear on January 14 by denying Bedree's Motion to Nullify and Void Judge Nancy Eschoff Boyer's Order. Bedree responded to that ruling by filing a motion to correct errors, again asserting his understanding of the aftermath of the "events" of January 14, i.e., that he had obtained default judgment as a matter of law: "PLAINTIFF HAS A DEFAULT JUDGMENT IN HIS FAVOR AS DEFENDANT FAILED TO APPEAR AND DEFAULTED ACCORDING TO SMALL CLAIMS COURT RULES." *Id.* at 35. In denying the motion, Judge Fee took the occasion to clarify the then-current status of the lawsuit: "Contrary to plaintiff's assertion, the record reflects that no default judgment has been entered in this cause. The plaintiff's Complaint is in pretrial status, and the pending issue before the Court is defendant's Motion to Dismiss filed January 9, 2003." *Id.* at 33. Judge Fee was correct with respect to the status of Bedree's motion for default judgment: the court had not yet ruled on it. Accordingly, all of the aforementioned rulings left Bedree's motion for default judgment precisely where it should have been: pending before the trial court. DeGroote's motion to dismiss was also pending before the trial court. To facilitate ruling on the latter motion, Judge Fee directed Bedree to file a written response no later than February 24. Bedree did so.[2] On March 18, Bedree followed that submission with a

---

2. On February 24, 2003, Bedree filed "Plain-
tiff's Court Ordered Response". *Id.* at 38. It

motion that amounted to a reiteration of his motion for default judgment.

We pause here to take inventory of the situation as it existed after Bedree filed his March 18 motion. Judge Fee had assumed jurisdiction over the action and indicated that Bedree's motion for default judgment and DeGroote's motion to dismiss were still pending before the court. Both parties had briefed the court to explain their respective positions on the pending motions. In short, all was as it should have been. It was in that context that Judge Fee issued the order denying Bedree's motion and granting DeGroote's. We turn our attention now to the merits of those two rulings.

Bedree argued in the trial court and maintains on appeal that, as a technical, procedural matter, he is entitled to default judgment because DeGroote did not appear in court on the original hearing date. That view is informed by two fundamental misconceptions, one regarding the rules of civil procedure as they relate to the concept of jurisdiction of the court, and the other regarding the interpretation of Allen County Small Claims Rules (A.C.S.C.R.) 7(A) and 8(A), (B), (C)(1) and (2). We will begin by examining the Allen County Small Claims Rules.

■ A.C.S.C.R. 7(A) provides that a party may obtain one continuance as a matter of right. Bedree correctly notes, however, that the rule specifies that such a motion "shall not be granted within seven (7) days of the trial[.]" It is upon this foundation that Bedree constructs his entire argument. If the provision read precisely as Bedree represents that it does, then his construction of that meaning of the rule would be at least arguable. Un-

fortunately for Bedree, he has failed to account for a clause in Rule 7(A) that defeats his argument.

With the omitted clause included, the relevant portion of Rule 7(A) states, "A continuance under this subsection shall not be granted within seven (7) days of the trial *unless approved by a Judge or Referee.*" A.C.S.C.R. 7(A) (emphasis supplied). When the foregoing provision is considered in its entirety, it is apparent that the prohibition against late-filed motions for continuances is not ironclad. According to the plain meaning of the rule, a party may receive a continuance if it has been approved by a judge or referee. This indicates that there is no per se rule in Allen County against requests for continuances that are filed less than seven days before the small claims trial. Such requests fall within the discretion of a judge or a referee, according to Rule 7(A). All of that said, however, we can find nothing in the *Appellant's Appendices* indicating that the motion was granted, or even addressed, before the hearing date. This does not aid Bedree's cause.

As indicated previously in this opinion, Judge Boyer retained limited jurisdiction in Bedree's case to rule upon emergency matters, and the petition for continuance filed just five days before the scheduled hearing date may well qualify as an "emergency matter" in this context. The fact that she had such jurisdiction, however, does not mean in this case that she was compelled to exercise it with respect to the motion for continuance. Judge Boyer's failure to rule upon the motion before the hearing date simply relegated the motion to the same category as all other matters then pending in the cause: they were held in abeyance for determination by the spe-

consisted of twenty-six numbered paragraphs setting forth the procedural history of the case

and summarizing the arguments previously asserted in his motion for default judgment.

cial judge upon that judge's appointment and assumption of jurisdiction.

It is unfortunate that Bedree did not know the rules of procedure well enough to realize that there could have been no trial on January 14. Regrettably for Bedree, that lack of knowledge resulted in what amounted to a wasted trip to the courthouse. Be that as it may, neither the timing of the motion's filing nor the fact that Judge Boyer failed to rule upon it before the date of the scheduled hearing entitled Bedree to a default judgment on procedural grounds. The trial court therefore did not err in denying Bedree's motion for default judgment, and in denying the various motions he subsequently filed challenging that ruling.

 Finally, we turn to the merits of the ruling in DeGroote's favor with respect to her motion to dismiss. In that motion, DeGroote argued that Bedree's complaint should be dismissed pursuant to Trial Rule 12(B)(6) because DeGroote was entitled to absolute judicial immunity. Our standard of review in such matters is well settled, and is as follows:

> In reviewing a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6), our standard of review is well settled. A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party. In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record.

*Lawson v. First Union Mortg. Co.,* 786 N.E.2d 279, 281 (Ind.Ct.App.2003). DeGroote claimed that the acts of which Bedree complains were undertaken in her judicial capacity, and therefore that she is entitled to absolute immunity from lawsuits for money damages. *See, e.g., Sims v. Beamer,* 757 N.E.2d 1021 (Ind.Ct.App. 2001). DeGroote is correct in asserting that she is immune from liability for those actions if they can indeed be characterized as judicial acts. *Id.* It is only where a judge's actions are taken in the complete absence of any jurisdiction that judicial immunity will not apply. *Id.* We summarily hold that the alleged actions upon which Bedree's complaint was based were judicial acts entitled to immunity.

In *Niksich v. Cotton,* 793 N.E.2d 1189 (Ind.Ct.App.2003), a different panel of this court determined that T.R. 12(B)(6) would contravene the spirit and purpose of small claims procedure and therefore is inapplicable in a small claims action. We note, however, that the *Niksich* decision contradicts at least one other decision by this court that upheld dismissal in small claims action under T.R. 12(B)(6). *See E & L Rental Equip., Inc. v. Gifford,* 744 N.E.2d 1007 (Ind.Ct.App.2001) (permitted dismissal pursuant to T.R. 12(B)(6) on grounds that the plaintiff was not a real party in interest). We need not weigh in on the question of whether T.R. 12(B)(6) dismissal is appropriate in a small claims action because the granting of DeGroote's motion to dismiss is affirmable on other grounds.

The *Niksich* panel's ruling may arguably be interpreted as a blanket rejection of T.R. 12(B)(6) in the small claims setting, regardless of the basis for the 12(B)(6)

motion.[3] We note, however, that the T.R. 12(B)(6) movant in *Niksich* sought dismissal on the ground that the complaint was in some way inadequate. The court rejected application of the rule in that context, stating, "the policy of small claims pleading is not to be bound by statutory provisions or rules of pleading. Allowing defendants to bring T.R. 12(B)(6) motions challenging the sufficiency of the complaint is incompatible with the lower burden of pleading in small claims cases." *Id.* at 1191.

█ In the instant case, DeGroote's 12(B)(6) challenge to the viability of Bedree's action does not call into question his adherence to procedural rules or observance of legal formalities. Rather, it simply asserts that the law forbids actions such as Bedree has brought here—and, indeed, it does. Are we bound by *Niksich* to force Magistrate DeGroote to appear at a small claims hearing to defend against a complaint, when the outcome is a foregone conclusion as a matter of law? Put another way, are the grounds mentioned in S.C.R. 10 (which includes, with respect to defendants, only failure to appear) the *only* grounds available for dismissing small claims actions without a hearing? In this particular case, pursuant to ˌA.C.S.C.R. 8(C), we answer that question in the negative. A.C.S.C.R. 8(C) contains a "catch-all" provision that states,

> The cause or any pending pleadings in the cause may be dismissed with or without prejudice upon order of the Court, including *by way of illustration and not limitation,* as follows:
>
> (1) the cause has not been reduced to judgment and where there has been no action on the case for a period of sixty (60) days; provided however,

that no such cause shall be dismissed without notice and hearing; or

> (2) a proceedings supplemental pleading has been filed and there is not action on the day on which the proceedings supplemental is set for hearing, or for sixty (60) days thereafter.

[Emphasis supplied.] The highlighted language in the foregoing provision indicates clearly that the two examples that followed were for illustrative purposes only, and not to be construed as an exhaustive and exclusive list. *Cf. Hicks v. State,* 690 N.E.2d 215 (Ind.1997) (construing the language of Indiana Evidence Rule 404(b), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"; the "such as" language indicates the list is non-exhaustive). Thus, regardless of whether the Indiana Small Claims Rules permit dismissal of a small claims complaint for grounds other than failure to appear, the Allen County small claims rule governing dismissal of actions is clearly broad enough to permit dismissal on other, appropriate grounds. Judicial immunity of the defendant is one. such ground. Therefore, the trial court's order of dismissal is affirmable, if not under the Indiana Small Claims Rules, then under Rule 8(C) of the Allen County Small Claim Rules. *See Newman v. Deiter,* 702 N.E.2d 1093, 1097 (Ind.Ct.App.1998) ("we will affirm the trial court's grant of a motion to dismiss if it is sustainable on any theory or basis found in the record"), *trans. denied.*

In summary, Bedree's complaint against Magistrate DeGroote was based upon acts

---

**3.** We say "arguably" here because the *Niksich* panel did seem to approve of the application of T.R. 12(B)(6) where it served as the vehicle for implementing T.R. 17(A), which addresses the subject of real party in interest.

she allegedly committed while presiding over Bedree's small claims case against GMAC. Accepting those allegations as true, it is apparent that DeGroote is entitled to immunity for those actions, which were undertaken in her judicial capacity. We may affirm a successful T.R. 12(B)(6) motion upon any grounds supported in the record when the complaint states facts that, even if true, would not support the relief sought in that complaint. *See Newman v. Deiter*, 702 N.E.2d 1093. Therefore, we conclude that, pursuant to A.C.S.C.R. 8(C), the court did not err in granting DeGroote's motion to dismiss with prejudice.

Judgment affirmed.

RILEY, J., and SULLIVAN, J., concur.